[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 19, 2006
THOMAS K. KAHN
CLERK

No. 05-16201
Non-Argument Calendar
_____

D. C. Docket No. 05-00026-CV-JEC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SUSANA P. LONGO,
a.k.a. Susana McDermott,
a.k.a. Susana Perales,
a.k.a. Hilda Perales,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 19, 2006)**

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Susan P. Longo appeals her 168–month, 60–month, and 120–month concurrent sentences for wire fraud, embezzlement from employee benefit plans, and money laundering in violation of 18 U.S.C. §§ 2, 664, 1343, 1349, and 1957. Longo contends that the district court erroneously applied the following three enhancements in calculating her advisory guidelines sentence: (1) a four level enhancement under § 2B1.1(b)(2)(B) because the offense involved fifty or more victims; (2) a two level enhancement under § 2B1.1(b)(9)(C) because the offense involved sophisticated means; and (3) a four level enhancement under § 2B1.1(b)(15)(A)(iii) because the offense involved a violation of securities law.

According to the presentence investigation report (PSI), Longo was employed as a compliance officer with the investment advisor Applied Financial Group (AFG) when she diverted approximately $6.1 million from four employee benefit plans. In her scheme to defraud, Longo drafted checks on the plans' accounts and either forged the signature of a plan trustee or represented herself as the plan trustee and liquidated the securities held by the plan. She also forged checks and faxed trading orders to Charles Schwab & Co. (Schwab), the plans' custodian. These checks and trading orders liquidated the plans' assets and transferred them to conduit accounts, also maintained by Schwab, where the account holder had either died or lacked the mental capacity to monitor Longo's

2

actions. Longo then drafted checks on these accounts, depositing the funds into her personal account.

Two of the four plans that Longo stole from had a combined total plan membership of over 110 members and each member held a pro rata interest in the plans' assets. One of those plans (with about 50 members) incurred approximately $500,000 in legal fees and expenses as a result of Longo's fraud that, like Longo's theft, diminished the total plan assets. The liquidation and eventual freezing of the plans' assets also resulted in more direct problems for the individual plan participants, especially retired individuals who used the money to pay living expenses. For instance, one man was forced to return to the workforce after his retirement, another had to get two jobs to make ends meet, and a third had to borrow $10,000 to avoid losing his retirement home.

We review a district court's findings of fact for clear error and the application of the guidelines to those facts de novo. United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006). A finding that a defendant used sophisticated means is a finding of fact reviewed for clear error. See United States v. Barakat, 130 F.3d 1448, 1457 (11th Cir. 1997). Having reviewed the record and considered the parties' briefs, we discern no reversible error.

**I.**

Longo contends that the district court improperly enhanced her sentence by providing a four level enhancement under section 2B1.1 of the guidelines for an offense involving fifty or more victims.  See U.S.S.G. § 2B1.1(b)(2) (2004).  Under that section, a victim is defined in part as "any person who sustained any part of the actual loss determined under subsection (b)(1) . . . 'Person' includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."  Id., comment. (n.1).  Actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."  Id., comment. (n.3).

Longo's contention concerns two separate questions.  The first is whether reimbursement precludes a person from being considered a victim.  The second is how victims should be counted—in this case whether each plan counts as a single victim or whether each individual participant in the plan counts as a victim.  Our decision in United States v. Lee, 427 F.3d 881, 894–95 (11th Cir. 2005), cert. denied sub nom. Wyman v. United States, 126 S. Ct. 1447 (2006), is controlling as to the first question.   In that case we held that a victim who is reimbursed for his losses qualifies as a victim for the purposes of § 2B1.1(b)(2)(A).  We concluded that the Sixth Circuit misread the guidelines commentary in United States v. Yagar,

404 F.3d 967 (6th Cir. 2005), when it held that bank account holders who were reimbursed by the banks for the cost of buying new checks were not victims because they were fully reimbursed for their temporary loss. Id. Even if the payments by the insurance companies and other third parties as well as the monies recovered from Longo during the state receivership proceedings fully reimbursed the employee benefit plans for their loss (and it is not clear that they did), this reimbursement does not preclude any of the persons who suffered an actual loss from being considered victims under § 2B1.1(b)(2).

As to the second question, we conclude that the district court did not err in finding that the plan participants should be counted as victims under § 2B1.1(b)(2). Longo stole money from four employee benefit plans, two of which had a combined membership of 110 participants. As the statements of some of the plan participants show, they each individually suffered pecuniary harm because they each owned a pro rata share of the plan assets and held them jointly and severally. The harm to the participants was reasonably foreseeable as Longo was embezzling massive amounts of money directly from the plans. Each of the plan participants suffered an actual loss and so each was a victim. Because there were over fifty participants, the district court did not clearly err in applying the four level enhancement under § 2B1.1(b)(2).

5

## II.

Longo's second contention is that the district court clearly erred in applying the sophisticated means enhancement. We disagree. Section 2B1.1 provides for a two level enhancement if the offense involved sophisticated means. U.S.S.G. § 2B1.1(b)(9)(C) (2004). The commentary states that sophisticated means are

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

§ 2B1.1, comment. (n.8(B)). Not all actions need to be sophisticated in order to support a sophisticated means enhancement; it is sufficient if the totality of the scheme was sophisticated. United States v. Halloran, 415 F.3d 940, 945 (8th Cir. 2005); United States v. Finck, 407 F.3d 908, 915 (8th Cir. 2005), cert. denied, 126 S.Ct. 282 (2005) ("Repetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme.").

Longo engaged in repetitive and coordinated conduct requiring multiple financial transactions before she received money. Her scheme involved forgery, misrepresentation, falsification and destruction of documents, re-routing of mail, and selection of conduit account holders who were unlikely to discover her use of

6

those accounts. Even though certain aspects of Longo's scheme were not sophisticated, the district court did not clearly err in finding that the offense considered as a whole involved sophisticated means.

## III.

Finally, we disagree with Longo's third contention that the district court erred in imposing a securities law violation enhancement. Her contention is two–fold: (1) that the district court failed to make findings as to the enhancement and (2) that the record does not support that every element of the underlying offense conduct is satisfied. Both arguments fail.

The district court made adequate findings as to this enhancement. The court adopted the PSI in its entirety only excluding any exceptions it specifically stated. Although the court did not make explicit findings of fact as to this enhancement, its adoption of the PSI's facts and recommendation on this issue is sufficient to permit meaningful appellate review.

With respect to Longo's second argument, the record shows that the district court did not err in applying the securities law enhancement. Section 2B1.1(b)(15) provides for a four level enhancement if the offense involved "a violation of securities law and, at the time of the offense, the defendant was . . . an investment adviser, or a person associated with an investment adviser." U.S.S.G.

7

§ 2B1.1(b)(15).  Under the plain language of that enhancement it requires a

showing that (1) the defendant violated a securities law and (2) that the defendant

was a qualifying individual at the time of the violation.  Securities law is defined as

"18 U.S.C. §§ 1348, 1350, and the provisions of law referred to in section 3(a)(47)

of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)); and . . . includes

the rules, regulations, and orders issued by the Securities and Exchange

Commission pursuant to the provisions of law referred to in such section."  Id.,

comment. (n.14(A)).  A person associated with an investment advisor[1] includes

partners, officers, or directors of an investment advisor and employees of an

investment advisor, except (in some instances) those whose functions are clerical

or ministerial.  Id., 15 U.S.C. § 80b-2(a)(17).

The PSI indicated that Longo's actions constituted a violation of several

securities laws, including 15 U.S.C. § 77q(a) which states:

> It shall be unlawful for any person in the offer or sale of any securities
> or any security-based swap agreement (as defined in section 206B of
> the Gramm-Leach-Bliley Act) by the use of any means or instruments
> of transportation or communication in interstate commerce or by use of
> the mails, directly or indirectly

---

[1] Defined as a person or company "who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." U.S.S.G. § 2B1.1, comment. (n.14(A)) (2004); 15 U.S.C. § 80b-2(a)(11).

8

(1) to employ any device, scheme, or artifice to defraud . . . .

15 U.S.C. § 77q(a).

Longo makes a cursory argument that § 77q(a) does not apply because "the record does not clearly establish a statutory violation—that is, that in the offer or sale of securities Ms. Longo committed one of the listed § 77q(a) prongs by the use of means or instruments of communication in interstate commerce."

The Supreme Court has noted that the term offer and sale in § 77q(a)(1) are "expansive" terms that Congress "expressly intended to define broadly." United States v. Naftalin, 441 U.S. 768, 772–73, 99 S. Ct. 2077, 2081–82 (1979) (holding that placing orders with brokers for the sale of stock a defendant did not actually own constituted fraud in the offer and sale of securities in violation of § 77q(a)(1) because the statute's terms encompassed the entire selling process and applied regardless of any injury to a purchaser).

Longo misrepresented herself as a plan trustee and directed the liquidation of securities. She forged checks and, using interstate telephone lines, faxed forged trading orders to Schwab, which had the effect of liquidating plan assets. She directed the withdrawal of cash from the proceeds of the securities to be deposited into accounts unrelated to the securities. By doing so she defrauded Schwab, the plans' custodian, who believed the transactions were legitimately authorized. She

9

directed the sale of securities using channels of interstate commerce in a scheme to defraud. These actions satisfy the elements of § 77q(a). See Naftalin, 441 U.S. at 772–73, 99 S. Ct. at 2081–82. Thus the record clearly shows that Longo violated a securities law that meets the first requirement for the § 2B1.1(b)(15) enhancement.

The only remaining question is whether Longo was a qualifying individual under the enhancement provision, and we conclude that she was because she was a person associated with an investment advisor. Longo's employer AFG was a registered investment advisor. At the time of the violation, Longo was a compliance officer who managed portfolios and (ironically) had responsibility for ensuring that activities and transactions affecting AFG's clients were authorized and conducted in compliance with state and federal law. She was an employee with more than clerical or ministerial duties. Because the undisputed facts establish that Longo violated a securities law and was a person associated with an investment advisor, the district court did not err in applying the enhancement.

**AFFIRMED.**