[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14991
Non-Argument Calendar
_____

D. C. Docket No. 05-20263-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO CARRALERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 7, 2006)**

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Ricardo Carralero appeals his 121-month total sentence, imposed after he pleaded guilty to conspiracy to traffic in one or more unauthorized access devices (Count 1), trafficking in one or more counterfeit access devices (Count 2), possession of 15 or more counterfeit and unauthorized access devices (Count 3), and possession of device-making equipment (Count 4), violations of 18 U.S.C. §§ 1029(b)(2), (a)(1), (a)(3), and (a)(4), respectively. On appeal, he argues that the district court imposed an unreasonable sentence based on an incorrect calculation of the amount of loss and plainly erred by considering his criminal history and prior convictions when calculating his guideline range and imposing a sentence under 18 U.S.C. § 3553(a). For the reasons set forth more fully below, we affirm.

At his plea colloquy, Carralero admitted to the following facts. Beginning in December 2004, Carralero recruited and hired a number of individuals to swipe customers' credit cards using a credit card skimming device to capture the cards' account numbers and the customers' information. Carralero would then verify the authenticity of the credit card numbers, and, after verification, he would pay the individuals for each skimmed number he received. The numbers were skimmed from customers of businesses located throughout the Southern District of Florida, and Carralero would use the unauthorized credit card number to produce a variety of fraudulent access devices such as fraudulent credit cards and gift cards. In

addition, Carralero personally used the unauthorized access devices to purchase merchandise and goods. From December 2004 through March 18, 2005, Carralero possessed 112,000 unauthorized credit cards, which he used or intended to use to produce unauthorized access devices. The government alleged that Carralero caused $56,020,000 of loss, to which Carralero reserved objection. His plea was accepted as knowing and voluntary.

A presentence investigation report (PSI) found that Carralero was responsible for 112,204 unauthorized access devices and further identified at least 20 corporate victims. Each unauthorized device was assessed a loss value of $500, for a total loss amount of $56,102,000. The PSI set Carralero's base offense level at 6, pursuant to U.S.S.G. § 2B1.1(a).[1] Next, relevant to the appeal, Carralero was assessed a 24-level enhancement because the amount of loss was greater than $50 million, but less than $100 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(M). Carralero was also assessed a two-level enhancement because the offense involved 10 or more victims, U.S.S.G. § 2B1.1(b)(2)(A). Carralero's total offense level was set at 33. Carralero's criminal history placed him in category III, which, at offense level 33, provided for an advisory sentencing range of 168 to 210 months'

---

[1] The PSI grouped all four counts together because they involved substantially the same harm, and, therefore, the conspiracy charge in Count 1 was used to establish the base offense level.

3

imprisonment.

Relevant to this appeal, Carralero objected to the loss calculation, arguing that the 112,204 devices attributed to him were not actually access devices that he possessed with the intent to defraud, and, in the alternative, requested a downward departure, arguing that the 24-level increase overstated the seriousness of his offense. Second, he objected that the PSI only listed nine victims. Finally, in a sentencing memorandum, Carralero argued that the PSI's recommended sentencing range was unreasonable in light of the sentencing factors set forth at 18 U.S.C. § 3553(a).

At sentencing, Carralero clarified his objection to the loss amount, arguing that the government had the burden of proving that 112,000 or so numbers it found were actually access devices. The government responded that it had not verified every number as a credit card number because the task was too staggering to complete. Instead, it had done a representative sampling, and not one of the numbers from the list had come back as anything other than a legitimate credit card number. Carralero disputed that the numbers were credit card numbers, and the district court noted that it was "unusual for someone to have rolls and rolls of credit card numbers that were not unauthorized." The court believed that the loss amount was clearly more than what the defendant conceded, but offered the parties

4

a chance to work out an agreement on a number for the loss, which they accepted. Ultimately, Carralero and the government, to avoid an evidentiary hearing, agreed to a loss amount of more than $7 million, which would provide for a 20-level, as opposed to 24-level, enhancement. The government further noted that the agreement was premised upon an understanding that it would recommend a sentence at the high end of the guidelines range.

The court also found that there were more than 10 victims by a preponderance of the evidence, and, therefore, the two-level enhancement was sustained. The court further denied Carralero's motion for a downward departure. Based on Carralero's agreed-to loss amount and the court's rulings, Carralero's offense level was set at 29, which, at criminal history category III provided for a sentencing range of 108 to 135 months' imprisonment.

The court then noted that Carralero had a substantial criminal history, including prior involvement in possessing counterfeit credit cards. The court stated that it would take into consideration Carralero's prior history of fraud and theft, as well as other § 3553(a) factors when imposing its sentence. Having considered the factors, as well as Carralero's sentencing memorandum, the court found that Carralero had committed a very serious crime and his sentence should reflect that seriousness as well as serve as a deterrent to future criminal conduct.

Upon considering the § 3553(a) factors, the statements of the parties, and the PSI, the court found that a mid-range sentence of 121 months' imprisonment was a reasonable sentence. Thus, the court imposed 60 months as to Count 1, 120 months as to Counts 2 and 3, and 121 months as to Count 4, with all terms of imprisonment to run concurrently.

While Carralero calls his first argument on appeal a reasonableness argument, his challenge to his sentence is essentially that the district court miscalculated his guidelines range because there was no evidence to support its findings regarding the loss amount or the number of victims. Specifically, he argues that, despite the fact that he agreed to the loss amount, the district court used, or would have used, an inappropriate legal standard for measuring the loss because it would have permitted the government to set a loss valuation based on credit card numbers that had not been verified as used by Carralero. As to the number of victims, Carralero argues that the government failed to establish a link between the 20 alleged victims and the 112,000 some unauthorized credit card numbers attributed to Carralero. Finally, Carralero argues that his sentence, combined with the incorrect guidelines calculations, was unreasonable because the § 3553(a) factors favored a lower sentence.

Where a defendant challenges his overall sentence, we review for

unreasonableness.  United States v. Winingear, 422 F.3d 1241, 1244-45 (11th Cir. 2005); United States v. Booker, 543 U.S. 220, 261-62, 125 S.Ct. 738, 765-66, 160 L.Ed.2d 621 (2005) (holding that appellate courts review sentences for unreasonableness in light of the § 3553(a) factors).  However, before conducting a reasonableness review of the ultimate sentence imposed, we will "first determine whether the district court correctly interpreted and applied the guidelines to calculate the appropriate advisory Guidelines range."  United States v. McVay, 447 F.3d 1348, 1353 (11th Cir. 2006).  We review de novo a district court's application and interpretation of the guidelines, but review the factual findings only for clear error.  United States v. Owens, 447 F.3d 1345, 1346 (11th Cir. 2006).

The Guidelines provide for varying levels of enhancement depending on the amount of loss involved.  See U.S.S.G. § 2B1.1(b)(1)(A)-(P).  We have held that a "sentencing court need only make a reasonable estimate of the loss, given the available information."  United States v. Lee, 427 F.3d 881, 893 (11th Cir. 2005). The Guidelines further provide that in cases involving stolen or counterfeit credit cards and access devices, loss includes "any unauthorized charges made with the counterfeit access device or unauthorized access device and shall not be less than $500 per access device."  U.S.S.G. § 2B1.1, comment. (n.3(F)(I)).  As for victims, if the offense involved 10 or more victims, a two-level enhancement is added.

7

U.S.S.G. § 2B1.1(b)(2)(I).

In the instant case, the district court did not err by applying a 20-level enhancement based on $7 million of loss because Carralero agreed to that amount in lieu of the evidentiary hearing that the district court was willing to hold. Thus, we conclude that the district court simply gave Carralero what he requested and agreed to, and, therefore, any error was invited and not reversible. See United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006) (noting that invited error is implicated when a party induces or invites the district court into making an error and this Court will not even invoke plain error review where the error is invited).

To the extent Carralero claims that the district court induced him to agree to a $7 million loss amount, the contention is without merit. The district court contemplated having witnesses testify that they had analyzed a sample of the 112,000 credit card numbers and confirmed that all were unauthorized. The court believed that a representative sampling would be sufficient, and the government explained that it would be a "staggering" task to analyze each and every number. Carralero clearly could have required the government to present evidence, but instead chose to forego that opportunity, and in so doing may have benefitted himself greatly. Based on a minimum of $500 per unauthorized credit card number, as contemplated in the  guidelines, a loss amount of $7 million accounts

8

for a mere 14,000 of the 112,000 numbers.  Given that Carralero admitted to possession of 112,000 unauthorized credit cards during his plea colloquy, the $7 million figure was a significant departure.  His decision to accept that number appears to be a tactical decision, and we conclude that any error was, as noted above, invited.[2]

As for the number of victims, the PSI identified no fewer than 20 corporate victims, although at the time the PSI was issued, only 7 had come forward with the losses actually suffered.  That 13 others had not yet assessed their losses did not mean that they were not victims. In fact, as best as can be discerned, Carralero's original objection was based on an earlier version of the PSI that identified only nine victims.  At sentencing, when faced with the amended PSI listing 20 identifiable victims, Carralero's argument seemed to be that the government needed to link the victims to the 112,000 credit card numbers, but that step seems unnecessary in light of the fact that Carralero admitted to possessing the numbers and the PSI identified the victims.  While it would have been helpful to have the specifics, it does not make sense that the probation office would have just made up

_____

[2] Carralero makes a passing argument that the district court should only have considered those unauthorized access devices pleaded in the indictment.  However, this argument is meritless because the district court was permitted to make factual findings by a preponderance of the evidence that went beyond the letter of the charges in the indictment at sentencing under the advisory guidelines.  See United States v. Chau, 426 F.3d 1318, 1324 (11th Cir. 2005).

the names of 20 corporate victims. Instead, common sense says that some of the numbers were matched back to certain identifiable victims, some of whom were still processing their losses—not surprising in light of the vast number of credit card numbers involved. At the time of sentencing, the government had to request a later hearing to determine restitution because, even at that stage of the case, not all of the victims or losses had been fully identified. Thus, we conclude that the district court did not clearly err by finding that there were more than 10 victims involved, and, therefore, the two-level enhancement was appropriately applied.

Lastly, to the extent Carralero argues that his sentence was unreasonable in light of the § 3553(a) factors, his argument lacks merit. We have rejected the notion that a sentence within the guidelines is per se reasonable, although "the use of the Guidelines remains central to the sentencing process." United States v. Talley, 431 F.3d 784, 787 (11th Cir. 2005). We have further stated that, "there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Id. at 788.

Here, the district court considered the § 3553(a) factors and determined that, among other things, Carralero had a "substantial criminal history" that included prior involvement with counterfeit credit cards. The court found that Carralero had

10

committed a "serious crime" and determined that his sentence needed to reflect the seriousness of the crime, provide adequate punishment, and deter future criminal conduct. Thus, after considering the statements of the parties, the PSI, and the § 3553(a) factors, the court found a mid-range sentence of 121 months' imprisonment appropriate. Given the vast number of unauthorized credit cards involved in this case, the district court would have been justified in sentencing Carralero to a lengthier term of imprisonment, but took great care in imposing the sentence it did. We cannot say that Carralero's sentence was unreasonable.

Next, Carralero argues that, in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 421 (2005), the district court violated his Sixth Amendment right to a jury and Fifth Amendment right to an indictment when it enhanced his sentencing range on the basis of uncharged prior convictions, both under the guidelines and as part of the § 3553(a) sentencing factors.

Where, as here, Carralero failed to lodge a constitutional objection to his sentence on grounds that the district court improperly enhanced his sentence in violation of his Fifth Amendment right to an indictment and Sixth Amendment right to a jury, we will review only for plain error. United States v. Rodriguez, 398

11

F.3d 1291, 1298 (11th Cir), cert. denied, 125 S.Ct. 2935 (2005). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." Id. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. We have held that there are two possible Booker errors, the first being the constitutional error of extra-verdict sentence enhancements, and the second being the statutory error of applying the guidelines in a mandatory fashion. United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005).

Post-Booker, we have held that nothing in Booker disturbed the Supreme Court's holdings in Almendarez-Torres or Apprendi, and that a district court, therefore, does not err by relying on prior convictions to enhance a defendant's sentence. See United States v. Gibson, 434 F.3d 1234, 1246-47 (11th Cir. 2005). We have further held that until the Supreme Court explicitly overrules it, Almendarez-Torres will continue to be followed. Id. at 1247 ("Though wounded, Almendarez-Torres still marches on and we are ordered to follow.").

Moreover, as the government points out, Carralero never objected to the prior convictions listed in his PSI, and, therefore, those convictions are deemed

12

admitted. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that, where the defendant did not challenge the relevant facts in the PSI, those facts were deemed admitted, and no constitutional error occurred under Booker). In any event, the court was permitted to make factual findings regarding Carralero's prior convictions and factor them into its guideline calculations because it correctly understood the guidelines to be only advisory. Chau, 426 F.3d at 1324. Accordingly, no Sixth Amendment violation or statutory error occurred.

Similarly, the court properly considered Carralero's criminal history under § 3553(a) because that section explicitly directs courts to consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Moreover, § 3553(a) also directs courts to impose a sentence that promotes respect for the law, affords adequate deterrence, and protects the public from further crimes of the defendant. Id. § 3553(a)(2)(A)-(C). Carralero's criminal history is relevant to all of these considerations, and, therefore, the district court did not err by considering Carralero's prior convictions.

Lastly, to the extent that Carralero argues that the prior convictions were required to be alleged in the indictment, neither Apprendi, Blakely, nor Booker implicated the Fifth Amendment, and, in any event, prior convictions were explicitly excluded from the rule that extra-verdict findings are unconstitutional if

13

they are binding and mandatory.  <u>Booker</u>, 543 U.S at 244, 125 S.Ct. at 756. Furthermore, we have rejected the notion that a defendant has a Fifth Amendment right to have prior convictions that trigger a Guidelines enhancement found by a grand jury and charged in his indictment because the problem with extra-verdict enhancements is their use in a mandatory guidelines system, which is no longer an issue in this case because the district court was not bound by the guidelines. <u>United States v. Thomas</u>, 446 F.3d 1348, 1355 (11th Cir. 2006); <u>see also</u> <u>Gibson</u>, 434 F.3d at 1249 ("Fifth and Sixth Amendment concerns expressed in <u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> are not implicated when a defendant's sentence is enhanced based on his prior convictions. . . . As far as his prior convictions are concerned, [the defendant] had no Fifth or Sixth Amendment rights to waive.").

Based on the foregoing, we conclude that the district court did not commit any error, plain or otherwise, by considering Carralero's prior convictions and criminal history and did not impose an unreasonable sentence in light of the loss amount and number of victims.  We, therefore, affirm.

**AFFIRMED.**