# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2882

_____

|  |  |
|---|---|
| United States of America, | * |
|  | * |
|  | * |
| Appellee, | * |
|  | * |
| v. | * |
|  | * |
| Wellington Icaza, also known as | * |
| Arnaldo Javier Garcia, | * |
|  | * |
| Appellant. | * |
|  | * |

Appeals from the United States District Court for the Southern District of Iowa.

_____

No. 06-2883

_____

|  |  |
|---|---|
| United States of America, | * |
|  | * |
| Appellee, | * |
|  | * |
| v. | * |
|  | * |
| Rosaura Amparo Jaramillo-Martinez, | * |
|  | * |
| Appellant. | |

_____

No. 06-3003

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Gladys Icaza Peterson, | * |
| | * |
| Appellant. | * |
| | * |

_____

Submitted: April 10, 2007
Filed: July 10, 2007

_____

Before MELLOY, BOWMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Wellington Icaza, Rosaura Jaramillo-Martinez and Gladys Icaza Peterson pled guilty to conspiracy to commit interstate transportation of stolen property and interstate transportation of stolen property in violation of 18 U.S.C. §§ 371 and 2314. Jaramillo-Martinez also pled guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326. The appellants appeal their sentences. For the reasons discussed below, we vacate the sentences of all three appellants and remand to the district court for resentencing.

## I.    BACKGROUND

Icaza, Jaramillo-Martinez and Peterson ("the appellants") traveled across the United States shoplifting over-the-counter medicines and other items from a multitude of retail stores. Police apprehended the appellants after employees observed them shoplifting from a Walgreens in Bettendorf, Iowa. After entry of their guilty pleas, the district court sentenced the appellants at a single sentencing hearing. Two law enforcement officials, along with Jerry Biggs, Coordinator of the Organized Retail Crime Division for Walgreens, testified as to the scope of the appellants' criminal enterprise. The Government also introduced a number of ledgers seized from the appellants indicating quantities of items stolen. An analysis of just one ledger revealed the value of stolen items detailed in that ledger to be $611,194. In combination with the value of items recovered after apprehension of the appellants, this evidence supported a total theft value of $855,833, of which $674,634 could be tied to thefts from Walgreens stores. A Government witness extrapolated from the value of items stolen from the Bettendorf Walgreens to estimate that the appellants shoplifted from approximately 407 Walgreens stores in order to accumulate that $674,634 worth of stolen items.

At sentencing, in calculating the advisory guidelines range for each appellant, the district court applied a 14-level enhancement under § 2B1.1(b)(1) of the United States Sentencing Guidelines for an actual loss of more than $400,000 but less than $1,000,000. The district court noted that the amount-of-loss enhancement would have been significantly higher had the Government analyzed and presented evidence from every ledger instead of just one. In addition, the district court, counting each Walgreens store as a victim, applied a 6-level enhancement under § 2B1.1(b)(2) because the offense involved 250 or more victims. The resulting advisory guidelines ranges were 46 to 57 months for Icaza, 57 to 71 months for Jaramillo-Martinez and 51 to 63 months for Peterson. Each appellant was sentenced within his or her advisory guidelines range. The court sentenced Icaza to 47 months, Jaramillo-

Martinez to 57 months, and Peterson to 63 months in prison. On appeal, each appellant argues that the district court erred in finding that each Walgreens store was a separate victim for purposes of the § 2B1.1(b)(2) number-of-victims enhancement.

## B.    DISCUSSION

We must consider whether the district court erred in finding that each retail store of a corporation counted as a separate victim for purposes of the § 2B1.1(b)(2) number-of-victims enhancement. We review the district court's interpretation and application of the guidelines de novo and its findings of fact for clear error. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). We hold that the district court erred in interpreting the term "victim" in § 2B1.1(b)(2) to include each individual store when only the Walgreens corporation sustained an actual loss.

Section 2B1.1(b)(2) of the sentencing guidelines provides:

(Apply the greatest) If the offense--
(A) (i) involved 10 or more victims; or (ii) was committed through mass-marketing, increase by 2 levels;
(B) involved 50 or more victims, increase by 4 levels; or
(C) involved 250 or more victims, increase by 6 levels.

Section 2B1.1 Application Note 1 defines "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1). . .'Person' includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." Therefore, a victim must be an individual, corporation or company of some type that sustained part of the actual loss determined by the district court.

The district court found that each of the 407 Walgreens stores were separate victims of the actual $674,634 loss and applied a six-level enhancement.  However, Walgreens' Biggs testified as follows at sentencing:

> Q.  [Defense counsel]:    Assuming that the defendants were found responsible in this case for $674,000 in loss, and restitution was ordered, to whom would that restitution go?
>
> A.   It would go to our corporation.
>
> Q.   There aren't any individual stores that would receive any of that benefit or any of the money?
>
> A.   No.  Those stores would be – they would – everything is done by budget.   They have inventoried – they have taken their loss, but ultimately the corporation takes the loss.
>
> Q.  The corporation ultimately bears the loss of the product and the lost value in it?
>
> A.   Yes, sir.

Accordingly, the individual Walgreens stores did not "sustain[] any part of the actual loss determined under subsection (b)(1)"; instead, Walgreens corporation "sustained . . . the actual loss determined under subsection (b)(1)."  U.S.S.G. § 2B1.1 cmt. n.1.  Therefore, Walgreens corporation is the only victim for the $674,634 loss under § 2B1.1(b)(2).

We do not believe, as the Government argues, that the decision in *United States v. Longo*, 184 Fed. Appx. 910 (11th Cir. 2006) (unpublished per curiam), suggests a different result.  Longo embezzled funds from four employee benefit plans, two of which had a combined membership of more than 110 members.   *Id.* at 912.  The *Longo* court held that the district court did not err in counting the 110 individual plan members, rather than just the four plans, as victims for purposes of the § 2B1.1(b)(2)

enhancement. *Id.* at 913. However, the record in *Longo* showed that plan members "each individually suffered pecuniary harm because they each owned a *pro rata* share of the plan assets and held them jointly and severally." *Id.*[1] By contrast, in the instant case, there is no evidence that Walgreens' corporate structure gives individual Walgreens stores ownership of a pro rata share of corporate assets to be held jointly and severally. Furthermore, Biggs testified that no individual Walgreens store ultimately bore the pecuniary harm. For similar reasons, we also reject the Government's alternative argument that every shareholder of Walgreens is a victim for § 2B1.1(b)(2) purposes. *See United States v. Carralero*, 195 Fed. Appx. 874, 878-79 (11th Cir. 2006) (unpublished per curiam) (affirming a § 2B1.1(b)(2) enhancement based on 20 corporate victims, presumably credit-card issuers, where the defendant possessed 112,000 unauthorized credit card numbers).

For these reasons, we find that the district court erred in counting each Walgreens store as a separate victim for purposes of the § 2B1.1(b)(2) number-of-victims enhancement. Absent a showing that the error was harmless, an error in calculation of the sentencing guidelines requires remand. *Mashek*, 406 F.3d at 1015.

_____

[1]The Eleventh Circuit noted:

In particular, the record showed that Longo's fraud and theft diminished the total plan assets. The liquidation and eventual freezing of the plans' assets also resulted in more direct problems for the individual plan participants, especially retired individuals who used the money to pay living expenses. For instance, one man was forced to return to the workforce after his retirement, another had to get two jobs to make ends meet, and a third had to borrow $ 10,000 to avoid losing his retirement home.

*Longo*, 184 Fed. Appx. at 912.

The Government argues that any sentencing error with respect to Peterson is harmless because the district court stated with respect to Peterson's sentence:

> I'm saying that what I think is sufficient but not greater than necessary sentence, which is the charge the district court is given, I think it's 63 months, and to the extent that I have done a sword dance in accepting or rejecting role, amount of loss, number of victims, I think 63 months is a fair sentence under the *Booker* analysis and the *Haack* analysis.

The Government argues that the guidelines calculation error is harmless because "it is clear from the record that the district court would have given the defendant the same sentence regardless of which guidelines range applied." *United States v. Staples*, 410 F.3d 484, 492 (8th Cir. 2005). However, we have held that a statement by a district court such as the one above is not detailed enough to support a finding of harmless error:

> [W]here, as here, the sentencing court pronounces an identical alternative sentence, not based on any alternative guidelines calculation but instead intended to cover any and all potential guidelines calculation errors, the sentencing court effectively has ignored the requirement of *Haack* to "first determine the appropriate guidelines sentencing range" for the alternative sentence. We cannot make a finding of harmless error where the identical alternative sentence was not based on a correctly calculated advisory guidelines range.
>
> Our conclusion is supported by the fact that the absence of an identifiable advisory guidelines range for the alternative sentence thwarts our review of the sentence for reasonableness. Because a sentence within the properly calculated guidelines range is presumptively reasonable, a correctly calculated guidelines range is the necessary starting point for assessing the reasonableness of a variance.

*United States v. Bah*, 439 F.3d 423, 431-32 (8th Cir. 2006) (internal citations omitted); *see also Rita v. United States*, 551 U.S. ---, No. 06-5754, slip op. at 7 (June 21, 2007)

-7-

(holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

Thus, to support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range. Here, the district court did not determine an alternative guidelines range without the disputed number-of-victims enhancement and explain a variance from it based on § 3553(a) factors, but rather it made a blanket statement that 63 months is a "fair" sentence. Such a statement cannot provide the basis for a finding of harmless error.

Furthermore, the remainder of the record indicates the district court did not intend to pronounce the same sentence if the § 2B1.1(b)(2) enhancement was rejected on appeal. In fact, the district court explicitly disavowed such an intent later in the record in response to the Government's request for an alternative sentence if § 2B1.1(b)(2) was found not to apply:

> I'm gonna leave the sentence at 63 months based upon the guideline–the advisory guideline and the other 3553(a) factors. So I think the record is solid here that the number of victims, the amount of the loss, her criminal history category is not in dispute, so I'm going to stay with what the Court has made a record on.

This statement indicates that the district court based its 63-month sentence on the advisory guidelines range as determined by the record before the court, which included the miscalculated number of victims. For these reasons, we conclude that the guidelines miscalculation does not constitute harmless error.

## III.  CONCLUSION

Accordingly, we vacate the sentences of all three appellants and remand to the district court for resentencing.

_____