# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2447
_____

United States of America,          *
                                       *
         Appellant,       *
                                       *
      v.                           *
                                       *
Patrick James McMannus,      *
                                       *
         Appellee.        *

_____                       Appeals from the United States
                                       District Court for the
No. 06-2555                    Northern District of Iowa.

_____

United States of America,          *
                                       *
         Appellant,       *
                                       *
      v.                           *
                                       *
Sheri Brinton,                *
                                       *
         Appellee.        *

_____

Submitted: June 13, 2007
Filed: August 2, 2007

_____

Before MELLOY, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Patrick James McMannus and Sheri Brinton pled guilty to conspiracy to distribute methamphetamine and other offenses. On a prior appeal by the Government, a panel of this court vacated the sentences initially imposed on McMannus and Brinton as unreasonable. The Government now appeals the sentences imposed by the district court on remand. For the reasons discussed below, we vacate both sentences and remand to the district court for resentencing.

I.    BACKGROUND

McMannus and Brinton were two of sixteen individuals charged in an eight-count drug-conspiracy indictment. McMannus pled guilty to conspiracy to distribute 50 grams or more of methamphetamine mixture and conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. Brinton pled guilty to conspiracy to distribute 500 grams or more of methamphetamine mixture, and conspiracy to distribute marijuana, in violation of §§ 841(a)(1), 841(b)(1)(A) and 846, plus conspiracy to use a communication facility (the U. S. Postal Service) and to use a person under the age of 18 to distribute methamphetamine and marijuana in violation of §§ 843(b), 861 and 846.

At Brinton's first sentencing, post-*Blakely*[1] but pre-*Booker*,[2] the district court held that the sentencing guidelines were unconstitutional under *Blakely* and sentenced

_____

[1]*Blakely v. Washington*, 542 U.S. 296 (2004).

[2]*United States v. Booker*, 543 U.S. 220 (2005).

Brinton to the statutory mandatory minimum of 120 months. Although the district court did not attempt to calculate Brinton's sentencing guidelines range, it did note that she had no prior criminal history points. Her Presentence Investigation Report ("PSIR") suggested a guidelines range of 262 to 327 months, including a two-level increase for obstruction of justice under U.S.S.G. § 3C1.1 based on her plea-agreement stipulation that she "contacted her daughter . . . and told her to not tell law enforcement anything about the defendant's involvement in drug distribution and about defendant's utilization of her juvenile daughter in the distribution of controlled substances." Brinton Plea Agreement ¶ 34F.

At McMannus's first sentencing (also post-*Blakely* but pre-*Booker*), the district court calculated a sentencing guidelines range of 57 to 71 months but held that the guidelines were unconstitutional under *Blakely*. The district court found that McMannus was eligible for 18 U.S.C. § 3553(f) safety-valve relief from the 60-month statutory mandatory minimum. Utilizing its discretion within the statutory range of zero to forty years, the district court sentenced McMannus to 24 months. The district court pronounced alternative sentences at the low end of the guidelines range for each defendant in the event the guidelines were held to be constitutional.

On consolidated appeals, post-*Booker*, a panel of this court vacated both sentences as unreasonable and remanded for resentencing. With respect to Brinton, the panel stated:

> [W]e do not believe that Brinton's lack of criminal history, which is one of the considerations that determined her advisory guidelines range, *see* U.S.S.G. ch. 4, or anything else in the record justifies a variance of this magnitude. The sentence selected by the district court, a 54 percent variance, was outside the range of reasonableness.

*United States v. McMannus*, 436 F.3d 871, 875 (8th Cir. 2006). Similarly, with respect to McMannus, the panel stated:

-3-

While we can identify factors that may warrant a minor variance from the guidelines range, e.g., McMannus put himself through community college while on pretrial release, *see* 18 U.S.C. § 3553(a)(1), we find nothing in the record which would justify a variance of this magnitude under § 3553(a). The sentence selected by the district court, a 58 percent variance, was outside the range of reasonableness.

*Id.*

At Brinton's resentencing hearing, the district court first rejected the plea agreement stipulation regarding Brinton's sentencing guidelines enhancement for obstruction of justice. The district court stated that "the one sentence in [the PSIR, copied from the plea agreement stipulation] does not constitute obstruction of justice." Brinton Resent. Tr. at 13. Without that two-level enhancement, Brinton's advisory sentencing range decreased from 262 to 327 months to 210 to 262 months. The district court indicated that were this court to hold on appeal that the obstruction-of-justice enhancement should have been applied, the district court would, in the alternative, vary downward "not down to 210 but down to something close to 210" based on the non-threatening nature of the obstruction. *Id.* at 25.

The district court then proceeded to hear evidence in support of a downward variance. Brinton introduced evidence of her positive activities while in prison after her original sentencing, as well as supportive letters from her family. Brinton also cited the relatively low sentences received by others in the same conspiracy who played more significant roles than Brinton. The district court varied downward to 160 months, citing the need to avoid unwarranted disparity with the 180-month sentence imposed on the "kingpin" of the operation, Raul Canales, Sr. The district court also stated that if that ground for variance was overturned on appeal, it instead would vary downward to 180 months based on Brinton's uncredited cooperation and lack of criminal history.

By the time of McMannus's resentencing, he had already discharged his originally pronounced 24 months' imprisonment by completing a six-month Intensive Confinement Center or "boot camp" program followed by almost eight months at a halfway house.[3] At the resentencing hearing, the parties agreed that the advisory guidelines range was 57 to 71 months. McMannus reintroduced his exhibits from the original sentencing proceeding. He then presented testimony from probation officer Sandra Dodge, who supervised him during his original pretrial release and after his release from the halfway house. Dodge testified that McMannus passed all his urinalysis drug testing and found employment during his pretrial release. She then testified at length regarding his exemplary conduct since the first sentencing, noting his full-time employment after his release. She opined that, based on his post-sentence rehabilitation, further prison time would not "help [McMannus] any or help society." McMannus Resent. Tr. at 8. On cross-examination by the Government, Dodge stated that she also based her opinion on McMannus's behavior "prior to going to prison" and her "years of being a probation officer." *Id.* at 9.

McMannus next presented testimony from Steven Korger, a residential officer at the halfway house. Korger also met McMannus before his first sentencing because McMannus had reported to the halfway house for some of his urinalysis testing during pretrial release. Korger stated that while McMannus was on pretrial release, he complied with program requirements, was employed by an employer that usually did not hire from the halfway house and was enrolled in community college. Korger then testified at length about McMannus's positive post-sentencing impact on the community and concluded that returning McMannus to prison would have a "very

---

[3]*See* 18 U.S.C. § 4046 (giving the Bureau of Prisons discretion to adjust the term and conditions of incarceration of inmates who complete a "shock incarceration program"); *Castellini v. Lappin*, 365 F. Supp. 2d 197, 199 (D. Mass. 2005) ("A shock incarceration program is based upon an inmate serving a shorter, but more arduous, term."). The Bureau of Prisons has since discontinued the boot camp program. *See United States v. Fason*, 2006 WL 751282 (E.D. Ark. Mar. 21, 2006).

negative impact on his recovery program." *Id.* at 15. On cross-examination, Korger admitted that his "in-depth" contact with McMannus began post-sentencing. *Id.* at 18.

McMannus's uncle, Troy Deal, testified that McMannus stopped using drugs after his arrest in 2001, that McMannus had developed a bond with Deal's daughter that would be damaged if he returned to prison, and that McMannus graduated from community college while on pretrial release. McMannus's step-father also testified to his rehabilitation. Finally, probation officer Stacy Koolstra recommended no further prison time as well, based on all the above-mentioned factors plus McMannus's uncredited cooperation with investigators.

The district court pronounced a sentence of 24 months' imprisonment, identical to McMannus's original sentence. The district court found that, because of the new evidence introduced during the resentencing hearing, this court's previous opinion did not preclude the district court from pronouncing a term of imprisonment identical to the one vacated previously as unreasonable. The district court stated that it considered McMannus's post-sentencing conduct in determining the extent of the variance, but it also stated that it would pronounce the same sentence even if it had not considered that conduct. Finally, the district court clarified that it was not considering McMannus's uncredited cooperation as a factor in the variance, because the district court recognized that the cooperation already had been considered in granting McMannus's safety-valve reduction.

## II.    DISCUSSION

### A.    Brinton

The Government argues that the district court erred in rejecting the obstruction-of-justice enhancement for Brinton. "We review de novo a sentencing court's determination that section 3C1.1 applies to specific conduct, but we review for clear

error the court's factual findings." *United States v. Hare*, 49 F.3d 447, 453 (8th Cir. 1995) (quoting *United States v. McCoy*, 36 F.3d 740, 742 (8th Cir. 1994)). Section 3C1.1 applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." U.S.S.G. § 3C1.1. In this case, Brinton stipulated that she told her daughter to withhold information regarding Brinton's involvement in the criminal enterprise from investigators. The district court accepted the factual basis of the stipulation but determined that § 3C1.1 did not apply to this specific conduct. Therefore, our review is de novo.

We note that Brinton did not challenge the obstruction-of-justice enhancement, as it would have been a breach of her plea agreement to do so; the district court raised the issue sua sponte. The district court, citing the Fifth Amendment, held that the enhancement should not apply where a mother simply advises her daughter to remain silent about criminal activity. However, the stipulation states that Brinton, "after being approached by law enforcement and knowing that there was an investigation in this matter," attempted to influence her daughter not to reveal *Brinton's* involvement in the criminal enterprise to law enforcement: "[Brinton] told her to not tell law enforcement anything about *the defendant's* [i.e., Brinton's] *involvement* in drug distribution and about *defendant's* [i.e., Brinton's] *utilization* of her juvenile daughter in the distribution of controlled substances." Brinton Plea Agreement ¶ 34F (emphases added). In other words, the stipulation demonstrates not advice to the daughter to keep silent to protect herself, but instructions to the daughter to conceal Brinton's involvement in the illegal activity, including Brinton's use of a juvenile, from investigators. This specific conduct certainly qualifies as an "attempt[] to obstruct or impede . . . the administration of justice with respect to the investigation . . . of the instant offense of conviction . . . ." § 3C1.1.

The district court also relied on the absence of any evidence of threats or intimidation in the stipulation. The commentary to § 3C1.1 provides a "non-

exhaustive list of examples" of applicable obstructive conduct including "(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." § 3C1.1 cmt. n.4. Because the list of examples is non-exhaustive, the district court erred to the extent it held that evidence of overt threats or intimidation is required in order to apply the enhancement. *See, e.g.*, *United States v. Holland*, 884 F.2d 354, 358-59 (8th Cir. 1989) (affirming application of the enhancement where the "defendant requested a co-defendant not to mention the involvement of two individuals when making statements to law enforcement officials"). We conclude that the district court erred in not applying the § 3C1.1 two-level enhancement for obstruction of justice to the stipulated conduct.

An error in the advisory guidelines calculation requires remand unless the error is harmless. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005) (citing 18 U.S.C. § 3742(f)(1)). A district court's pronouncement of an alternative sentence may allow for such a finding of harmless error. *United States v. Icaza*, Nos. 06-2882/2883/3003, slip op. at 7 (8th Cir. Jul. 10, 2007). "[T]o support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range." *Id.* at 8. In this case, the district court stated that were this court to hold on appeal that the obstruction-of-justice enhancement should have been applied, the district court would, in the alternative, vary downward "not down to 210 but down to something close to 210" months based on the non-threatening nature of the obstruction. Brinton Resent. Tr. at 25. This statement, while suggesting an intent to pronounce an applicable alternative sentence, does not indicate precisely what the variance based on the non-threatening nature of the obstruction would have been. Moreover, it is unclear whether the district court would have increased the portion of the downward variance based on other factors to arrive at the same 160-month sentence. Because we have no specific alternative sentence to review, we must vacate Brinton's sentence based on the advisory guidelines calculation error and remand for resentencing without reaching the reasonableness of her sentence. *See Mashek*, 406 F.3d at 1017.

## B. McMannus

McMannus received a downward variance from an advisory guidelines range of 57 to 71 months to a sentence of 24 months, a 58 percent reduction, equivalent to a decrease of eight offense levels. The Government argues that the district court erred in relying on evidence of McMannus's post-sentencing rehabilitation at the resentencing hearing. Where this court vacates a sentence and remands for resentencing, the district court upon resentencing may "hear any relevant evidence that it could have heard at the first sentencing hearing." *United States v. Jenners*, 473 F.3d 894, 899 (8th Cir. 2007). "However, evidence of . . . post-sentencing rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing." *Id.*

In McMannus's case, the district court heard extensive and compelling evidence about McMannus's post-sentencing rehabilitation and admittedly relied on that evidence in pronouncing his new sentence. McMannus Resent. Tr. at 65, 72. Because the district court gave significant weight to McMannus's post-sentencing rehabilitation, an impermissible factor, we must vacate McMannus's sentence and remand for resentencing. *See United States v. Bonahoom*, 484 F.3d 1003, 1006 (8th Cir. 2007) ("A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors.") (quotation omitted).

The district court also announced that it would impose the same sentence on McMannus even had it not considered the evidence related to his post-sentencing rehabilitation. McMannus Resent. Tr. at 72. However, any harmless error analysis is precluded because the record on resentencing (excluding the impermissible evidence of post-sentencing rehabilitation) is substantially identical to the record at

McMannus's first sentencing.[4] A panel of this Court has already held that a 24-month sentence is unreasonable based on that record. *See McMannus*, 436 F.3d at 875. Therefore, a 24-month sentence on the same record cannot be affirmed by a new panel. *See United States v. Collins*, 321 F.3d 691, 698 n.5 (8th Cir. 2003). We reiterate the prior panel's holding that, while a downward variance from the advisory guidelines range certainly may be warranted, the 58 percent or eight-level reduction pronounced by the district court is unreasonable on this record. *Cf. United States v. Jensen*, Nos. 06-2284/2497, slip op. at 5 (8th Cir. June 28, 2007) ("A reduction of six guideline ranges is significant in the context of an advisory guideline system where the degree of most aggravating and mitigating adjustments is two, three, or four offense levels.").

## III.   CONCLUSION

We hold that the district court erred in not including an obstruction-of-justice enhancement in Brinton's advisory guidelines calculation and in giving significant

---

[4]With regard to the permissible factors in the resentencing record that might justify a downward variance, the record at the first sentencing already established that McMannus quit using drugs after his first arrest in 2001, McMannus Sent. Tr. at 6; that he put himself through community college while on pre-trial release, *id.* at 6, 8; that he was employed while on pretrial release and was highly commended by his employer, McMannus PSIR ¶ 69; that he was a "model" citizen while on pretrial release and never failed a urinalysis drug test, McMannus Sent. Tr. at 6; and that he cooperated to some extent, but not enough to merit a substantial assistance motion, *id.* at 11.

While the probation officers' opinion testimony at the resentencing hearing had not been presented at McMannus's first sentencing, the record reflects that those opinions also were based for the most part on the officers' observations of McMannus's post-sentencing rehabilitation. While it is difficult not to be swayed by McMannus's post-sentencing rehabilitation successes, allowing this evidence to influence his sentence would be grossly unfair to the vast majority of defendants who receive no sentencing-court review of any positive post-sentencing rehabilitative efforts.

weight to evidence of McMannus's post-sentencing rehabilitation. Accordingly, we vacate the sentences of Brinton and McMannus and remand to the district court for resentencing.

MELLOY, Circuit Judge, with whom SMITH, Circuit Judge, joins, concurring.

Based on current Eighth Circuit precedent, I concur in the judgment in this case. As to appellee Sheri Brinton, I concur fully in the analysis and discussion by the majority. As to appellee Patrick James McMannus, I agree that our prior decision in this case, United States v. McMannus, 436 F.3d 871 (8th Cir. 2006), has previously determined that absent consideration of post-sentencing rehabilitation, the sentence of twenty-four months was outside the range of reasonableness. There is nothing I can see in the record, other than post-sentencing rehabilitation, that was not before the circuit panel in the previous McMannus appeal. If we must exclude any consideration of post-sentencing rehabilitation, as the majority rightly notes we must under current circuit precedent, then the unreasonablenss of a twenty-four month sentence has already been determined by a prior panel of this court.

My concern with this case, and the reason for my concurrence, is the binding precedent upon which the McMannus decision rests, that is, the inability to consider post-sentencing rehabilitation. I would join the Third Circuit and hold that post-sentencing rehabilitation is not normally relevant, however, there are exceptional cases in which it may be considered. United States v. Lloyd, 469 F.3d 319, 325 (3rd Cir. 2006); see also, United States v. Butler, 221 Fed. Appx. 616, 617 (9th Cir. 2007) (unpublished). I would also find that this is such an exceptional case and that if we could consider post-sentencing rehabilitation, the sentence in this case would be reasonable. The majority has outlined the post-sentencing rehabilitation testimony and characterizes the evidence the district court heard as " . . extensive and compelling . . ." *ante* at 9. While I do not disagree with the concept that post-sentencing rehabilitation should not normally be considered because of the potential windfall to those defendants who are the beneficiaries of resentencings, I also do not believe that

-11-

we should have a rule that never allows an experienced district judge to consider that evidence. Certainly, such evidence is valuable in a case such as this where the post-sentencing rehabilitation not only involves conduct while incarcerated, but exceptional performance while in a half-way house and then following release to the community. Both the state probation officer who supervised Mr. McMannus in the half-way house and the federal probation officer who is currently supervising him on supervised release testified to his exceptional conduct.

In assessing at least three of the Section 3553(a) factors, deterrence, protection of the public and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct. In an exceptional case, such as this, I would permit the district court to consider that evidence in fashioning a reasonable sentence.

_____