EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
I concur in all but Part VI.A of the majority opinion. I dissent from that portion because I believe the district court properly treated the individual account holders as victims of Conner’s fraud under United States Sentencing Guidelines Manual (“USSG”) § 2Bl.l(b)(2) (2005).
Section 2Bl.l(b)(2) provides that a defendant’s Guidelines range should be increased by four levels if the defendant’s offense involved more than 50, but less than 250 victims. The application notes to § 2B1.1 define a victim as “any person who sustained any part of the actual loss determined under subsection (b)(1).” USSG § 2B1.1, cmt. n. 1. Actual loss is the “reasonably foreseeable pecuniary harm that resulted from the offense.” Id. at n. 3(a)(i). Further, “pecuniary harm” is defined as “harm that is monetary or that otherwise is readily measurable in money .... [Pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm.” Id. at n. 3(a)(iii). The question then is whether the individual account holders, obviously victims in the general sense of the word, suffered a “pecuniary harm that resulted from” Conner’s offense. Relying on United States v. Yagar, 404 F.3d 967 (6th Cir.2005), the majority concludes that because the individual account holders in this case ultimately were reimbursed, they did not suffer a pecuniary harm, and thus did not sustain any actual loss.[1] I disagree.
The fact that the account holders were later reimbursed for the fraudulent charges they incurred does not mean that the account holders failed to suffer an actual loss. See United States v. Lee, 427 F.3d 881, 894-95 (11th Cir.2005) (rejecting Yagar and holding that an actual loss occurs even though it happens to be remedied by recovery of collateral or return of goods). Without counting the account holders arguably charged prior to Conner’s entry into the conspiracy, the presen-tence investigation report (“PSR”) provides at least 67 separate account holders and the exact amounts fraudulently charged to their individual accounts during the conspiracy.[2] Based on this evidence in the PSR, the district court was free to find that each account holder suffered a “pecuniary harm” that “resulted from” Conner’s *494 offense, irrespective of the fact that they eventually were reimbursed.
The majority indicates that there is no reason to “stop the clock” to measure an account holder’s actual loss prior to reimbursement. But by waiting until after reimbursement to measure “pecuniary harm” and “actual loss,” the majority’s interpretation of the victim enhancement in § 2B1.1 runs counter to the fundamental sentencing goal of tying the severity of a defendant’s sentence to the seriousness of the defendant’s crime. See USSG § 1A1.1, Part A — Introduction, Subpart 3 (providing that through the creation of the Guidelines, Congress sought “proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity” (emphasis added)). To exemplify how the majority has turned the enhancement on its head, compare a defendant who defrauds 1,000 individuals that, after the fact, have their losses reimbursed by a single insurer and a defendant who defrauds 10 uninsured individuals.' Assuming an equal amount of loss, there can be no doubt that the first defendant’s crime is more serious and therefore deserving of a more severe sentence. The majority’s interpretation of the victim enhancement leads to the incongruous result of the second defendant receiving the higher Guidelines range.
That Conner was lucky enough to defraud victims who had fraud insurance should not result in his receiving a reduced sentence under the Guidelines, and we should not interpret § 2B1.1 to lead to such a result. Accordingly, I dissent from Part VI.A of the majority’s opinion, and would affirm both Conner’s conviction and sentence.

. The majority also relies in part on United States v. Icaza, 492 F.3d 967 (8th Cir.2007). But the majority's use of Icaza to connect restitution and actual loss puts the cart before the horse. See id. at 969-70. A party must suffer pecuniary loss to receive restitution, but a party may suffer an actual loss without seeking restitution. See United States v. Smiley, 210 Fed.Appx. 972, 975 (11th Cir.2006) (unpublished) (per curiam) ("The fact that the [victims] did not seek restitution does not mean they did not sustain an actual loss.”).

. Conner entered into the conspiracy in the Spring of 2003. The PSR lists the charges incurred by 84 different account holders. Seventeen accounts were fraudulently charged prior to May 24, 2003. The remaining accounts were charged between July 15, 2003 and June 20, 2005.