*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee/Cross-Appellant,*

        *v.*

JACQUELINE CAROL YAGAR,
        *Defendant-Appellant/Cross-Appellee.*

Nos. 04-5151/5264

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-20228—J. Daniel Breen, District Judge.

Argued: March 8, 2005

Decided and Filed: April 18, 2005

Before: MARTIN, GILMAN, and FRIEDMAN, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Camille R. McMullen, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Tracy L. Berry, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Jacqueline Carol Yagar appeals her sentence of twenty-one months of imprisonment for theft of stolen mail in violation of 18 U.S.C. § 1708. On appeal, Yagar claims that the district court erred by imposing two sentence enhancements in violation of the Sixth Amendment, and in calculating one of those enhancements under the United States Sentencing Guidelines. The United States cross-appeals, claiming that the district court erred in applying a two-level enhancement, rather than a four-level enhancement, under the Guidelines. For the following reasons, we **VACATE** Yagar's sentence and **REMAND** for resentencing consistent with the Supreme Court's decision in *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005).

---

[*]The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1

I.

On or about May 13, 2002, law enforcement officers began an investigation into a possible bank-fraud scheme, allegedly orchestrated by Jacqueline Carol Yagar, involving stolen checks drawn on approximately thirteen different accounts. In her scheme, Yagar allegedly used stolen checks to deposit more than $88,000 into the accounts of over fifty individuals using their stolen bank information. After depositing the stolen checks, Yagar withdrew portions of the deposited funds from forty-seven of those accounts, receiving $20,987.15 in cash.

On June 30, 2003, Yagar was indicted by a grand jury for multiple counts of identity theft in violation of 18 U.S.C. § 1028(a)(7) and mail theft in violation of 18 U.S.C. § 1708. Yagar pled guilty to the mail-theft charge, with the understanding that the United States would subsequently drop the identify-theft charges. The presentence report, using the 2002 version of the Guidelines, indicated that Yagar's criminal history points totaled eleven and her corresponding criminal history category was V. The report also calculated her base offense level to be six, but the report recommended an enhancement of four levels under section 2B1.1(b)(1) of the Guidelines because the loss to the victims was between $10,000 and $30,000. The report did not recommend an enhancement under section 2B1.1(b)(2)(A) of the Guidelines for a crime that involved more than ten, but less than fifty, victims. The report also awarded Yagar a two-level reduction for acceptance of responsibility. With a total offense level of eight, and a criminal history category of V, the suggested sentencing range was fifteen to twenty-one months of imprisonment.

On January 6, 2004, the United States filed a position paper, requesting the district court to impose an additional four-level enhancement under section 2B1.1(b)(2)(B) of the Guidelines because it alleged that there were fifty or more victims of the alleged offense. A sentencing hearing was conducted on January 15. The court generally followed the sentencing recommendations of the presentence report, enhancing Yagar's offense level by four levels under section 2B1.1(b)(1) based on the amount of loss and granting a two-level reduction for acceptance of responsibility. The court did, however, grant an additional two-level enhancement under section 2B1.1(b)(2)(A) based upon its determination that the number of victims—the sum of the number of banks (five) and the number of account holders who had to purchase new checks because of Yagar's scheme (six)—totaled more than ten. The court thus determined that the applicable sentencing range was twenty-one to twenty-seven months and sentenced her to twenty-one months, at the very bottom of the range, with two years of supervised release and restitution in the amount of $20,987.15.

On appeal, Yagar claims that the district court violated her Sixth Amendment rights by enhancing her sentence, under sections 2B1.1(b)(1) and 2B1.1(b)(2)(A) of the Guidelines, based on facts that were neither presented to a jury nor admitted by her. She also claims that the district court erred in applying the enhancement under section 2B1.1(b)(2)(A) based on its finding that her offense involved more than ten, but less than fifty, victims. The United States has cross-appealed, claiming that the court erred by not applying a four-level enhancement under section 2B1.1(b)(2)(B) because it alleges that fifty or more victims were involved.

II.

We first consider whether the district court violated Yagar's Sixth Amendment rights by applying two sentence enhancements under sections 2B1.1(b)(2)(A) and 2B1.1(b)(1) of the Guidelines based on facts that were neither proved to a jury nor admitted by Yagar. While this case was pending on appeal before this Court, the Supreme Court issued its decision in *United States v. Booker*. In *Booker*, the Supreme Court extended its Sixth Amendment holding in *Blakely v. Washington*, __ U.S. __, 124 S. Ct. 2531, 2536-37 (2004), to the federal Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict

must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. In so holding, the Court expressly stated that its decision in *Booker* must be applied "to all cases on direct review." *Id*. Because this case was pending on direct review when *Booker* was decided, the holdings of *Booker* are applicable in the present case.

Given the Supreme Court's opinion in *Booker*, and this Circuit's case law applying that decision, we are compelled to vacate Yagar's sentence and remand for resentencing. The district court relied on judge-found facts to apply two sentence enhancements in the present case, a two-level enhancement under section 2B1.1(b)(2)(A) based upon its determination that the number of victims totaled more than ten, and a four-level enhancement under section 2B1.1(b)(1) because it found that the loss to the victims was between $10,000 and $30,000. The record indicates that Yagar's admissions were insufficient to justify either of these enhancements. Thus, based on facts that were neither presented to a jury nor admitted by Yagar, the applicable sentencing range was increased from four to ten months (offense level of four) to twenty-one to twenty-seven months (offense level of ten). The district court's reliance on judge-found facts to increase her sentence was a violation of the Supreme Court's Sixth Amendment holding in *Booker*. Regardless of whether Yagar objected to her sentence on Sixth Amendment grounds in the district court, we are convinced that the proper course of action is to vacate Yagar's sentence and remand for resentencing. *See, e.g., United States v. McDaniel*, 398 F.3d 540, 547-51 (6th Cir. 2005) (holding that resentencing was required, under plain-error inquiry, where defendant was sentenced under mandatory Guidelines framework and received amount-of-loss enhancement pursuant to U.S.S.G. § 2B1.1(b)(1) based solely on judge-found facts).

III.

While resentencing is required under *Booker*, we consider the remaining claims because the district court will need to consider the correct Guidelines-recommended sentence in fashioning its own post-*Booker* sentence on remand. *See McDaniel*, 398 F.3d at 551 ("[B]ecause the district court will need to consider the Guidelines-recommended sentences on remand, we take this opportunity to provide some guidance as to the proper interpretation of the Guidelines provisions whose application was challenged on appeal.").

The remaining issue is whether the district court was correct to apply a two-level sentence enhancement under section 2B1.1(b)(2)(A) of the Guidelines based on its finding that the offense involved more than ten, but less than fifty, victims. The district court concluded that a two-level enhancement was appropriate because it found that there were at least eleven victims of the crime under the Guidelines (the five banks defrauded in the scheme and the six account holders who had to open new accounts and buy new checks as a result of Yagar's actions). Both parties appeal this decision. On the one hand, the United States claims that a four-level enhancement is appropriate under section 2B1.1(b)(2)(B) of the Guidelines because it alleges that the crime involved more than fifty victims—namely, the more than sixty account holders who temporarily lost funds resulting from Yagar's illegal conduct. On the other hand, Yagar claims that no enhancement was appropriate under section 2B1.1(b)(2)(B) because the evidence in the record is insufficient to support the district court's finding that six account holders were not reimbursed for their costs of purchasing new checks. Thus, she alleges there were only five true victims—namely, the five banks that suffered actual losses due to Yagar's scheme. Yagar also claims that even if the district court was correct to conclude that at least six account holders were not reimbursed for their costs of purchasing new checks, these six individuals are not "victims" under the Guidelines because the costs they incurred are similar to minimal damages that the Application Notes exclude from the enhancement's coverage.

A proper resolution of this issue largely depends on the scope of the word "victim" as it is used in section 2B1.1 of the Guidelines. Unfortunately, the Application Notes to the 2002 version

of the Guidelines do not offer much clarity. Application Note 3(A)(ii) defines a "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1)." The term "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." Application Note 2(A)(i). Furthermore, "pecuniary harm" is defined as "harm that is monetary or that otherwise is readily measurable in money" and "does not include emotional distress, harm to reputation, or other non-economic harm." Application Note 2(A)(iii). "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Application Note 2(A)(iv). Under Application Note 2(D)(i), certain damages are excluded from "actual loss," such as "interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs."

In addressing the issues presented on appeal, we consider each group of potential "victims" under the Guidelines. First, neither party contests the district court's finding that at least five banks lost funds because of Yagar's scheme. Thus, there are at least five "victims" in the present case.

The second group of potential victims consists of those account holders who only temporarily lost funds resulting from Yagar's conduct because their banks reimbursed them for their losses. Counsel for the United States claims that the fact that the account holders were subsequently reimbursed for their expenses should not matter because under the Guidelines "[t]here is no limitation as to when the actual loss must exist." Because the account holders temporarily lost funds from their account, the United States claims that they should be considered victims despite the fact that they were reimbursed. We disagree. In our view, these account holders are not "victims" under the Guidelines because they were fully reimbursed for their temporary financial losses. While there may be situations in which a person could be considered a "victim" under the Guidelines even though he or she is ultimately reimbursed, in situations such as this, where the monetary loss is short-lived and immediately covered by a third-party, we do not think that there has been "actual loss" or "pecuniary harm." In sum, the account holders here suffered no adverse effect as a practical matter from Yagar's conduct. Although our research produced no circuit court opinion on this issue, at least one district court seems to have taken a similar view. *Cf. United States v. Mohammed*, 315 F. Supp. 2d 354, 361-63 (S.D.N.Y. 2003) (concluding, with the government's concession, that enhancement under section 2B1.1(b)(2) was not proper where the defendant used stolen credit card information to make purchases and the victimized cardholders were reimbursed by the "merchants or financial institutions that ultimately bore the losses from these charges"). Thus, we hold that the district court did not err in excluding account holders who temporarily lost money from Yagar's conduct because, as the court correctly noted, under the Guidelines "the loss . . . has to be defined by what . . . resulted from the offense."

The final group of potential victims consists of the six account holders who were allegedly not fully reimbursed by their banks for the damages incurred when they had to order new checks. The district court concluded that these individuals did suffer reasonably foreseeable actual loss because there was, in its view, sufficient evidence to conclude that at least six account holders were required to pay for new checks as a result of Yagar's scheme. In making this finding, the district court relied on the testimony of two individuals, Kimi Johnson, a check-fraud investigator at First Tennessee Bank, and Eddie Ellis, Jr., a postal inspector who interviewed the account holders impacted by Yagar's scheme. The court explained its ruling:

> I think there were at least six individuals . . . who had to go out and close accounts and repurchase checks and things of that nature, and I believe Ms. Johnson testified, I mean, that based on what I heard from First Tennessee, they reimbursed these people for the checks that were, the moneys that were taken from their account to cover the checks but not for these other incidental expenses that they incurred as a

result of this offense.  There is no evidence, at least no indication rather, from what Mr. Ellis said that any of the six people he spoke with were ever reimbursed.

Our review of the record suggests that the district court erred in finding sufficient evidence that six account holders suffered pecuniary harm.  There is testimony in the record from Mr. Ellis that  it was his understanding that at least six of the account holders he talked to were required to pay for the new checks.  However, Ellis later admitted on cross examination that the account holders "did not tell [him whether] they were reimbursed" for their purchase of the new checks.  In fact, Ellis admitted that he never even asked the account holders whether they were reimbursed for their expenses.  While counsel for the United States claims in its briefs before this Court that the six account holders "paid for the issuance of checks on the new accounts for which they were not reimbursed," the government fails to point to any substantive evidence in the record supporting this statement.  Moreover, the district court's assessment of Johnson's testimony also appears to be misguided.  We can find no evidentiary support in the record for the district court's finding that First Tennessee did not reimburse its account holders for the new check orders.

Because a finding under the Guidelines must be based on reliable information and a preponderance of the evidence, *see* U.S.S.G. § 6A1.3, commentary, we hold that the district court did not have a proper factual basis to apply an enhancement under section 2B1.1(b)(2)(A).  *See, e.g., United States v. Lewis*, 88 Fed. Appx. 898, 902, 2004 WL 376828 (6th Cir. Feb. 27, 2004) (concluding that evidence was not sufficient to support an enhancement based on the number of victims where the court had "no way of knowing" whether the alleged victims actually suffered pecuniary harm); *United States v. Gray*, 71 Fed. Appx. 300, 301, 2003 WL 21683709 (6th Cir. July 18, 2003) (concluding that number-of-victims adjustment under section 2B1.1.1(b)(2)(A) was wrongly applied where there was insufficient evidence to support district court's conclusion that the underlying offense involved more than ten victims).  Thus, we hold that it would be improper for Yagar's sentence to be enhanced based on this record under section 2B1.1(b)(2)(A) of the Guidelines.[1]

IV.

For the foregoing reasons, we **VACATE** Yagar's sentence and **REMAND** for resentencing pursuant to the Supreme Court's decision in *Booker*.  Furthermore, we instruct the district court that the evidence contained in this record is insufficient to support an enhancement under section 2B1.1(b)(2)(A) given the lack of evidence establishing that six account holders were not reimbursed for their expenses.

---

[1]Because we conclude that an enhancement under section 2B1.1(b)(2)(A) is not adequately supported by the record, we need not consider Yagar's remaining claim that the costs of purchasing new checks are minimal damages insufficient to justify an enhancement under this section of the Guidelines.