**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 07-4591**

───────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

    v.

DONOVAN CARTER, a/k/a Dski, a/k/a Donavan Alton,

                Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Columbia. Cameron McGowan Currie, District Judge. (3:06-cr-01216-CMC)

───────────

Submitted: July 22, 2008        Decided: August 18, 2008

───────────

Before GREGORY, SHEDD, and DUNCAN, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

J. Falkner Wilkes, Greenville, South Carolina, for Appellant. Kevin F. McDonald, Acting United States Attorney, Dean A. Eichelberger, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donovan Carter appeals from his fifty-seven month sentence entered pursuant to his convictions for conspiracy to falsely alter and pass money orders and to defraud financial institutions.  On appeal, Carter challenges the calculation of his Guidelines range.  We affirm.

Carter first asserts that the district court clearly erred in determining the amount of loss for which he was responsible.  Specifically, he claims that many of the money orders attributed to him were insufficiently linked to him.  We review the amount of loss, to the extent it is a factual matter, for clear error.  United States v. West, 2 F.3d 66, 71 (4th Cir. 1993).  This deferential standard of review requires reversal only if we are "left with the definite and firm conviction that a mistake has been committed."  United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005).  A sentencing court may consider any evidence that "has a sufficient indicia of reliability."  See U.S. Sentencing Guidelines Manual § 6A1.3(a) (2006).

Here, there was testimony at the sentencing hearing that all the money orders attributed to Carter met several criteria: (1) they were purchased in either California or South Carolina during a specific two-month period; (2) they were purchased for nominal amounts; (3) they were negotiated in North or South Carolina; and (4) they were altered by exactly $900.  In addition,

most were traced directly back to Carter by interviews with the purchasers or negotiators. We find that this testimony was sufficient to show by a preponderance of the evidence that each of the money orders attributed to Carter was a foreseeable part of the conspiracy. Accordingly, the district court did not clearly err in adopting the calculation of loss in the presentence report.

Carter next argues that, because some of the banks were reimbursed for their losses from the people who negotiated the altered money orders, these banks did not suffer a loss and should, therefore, not be considered victims for Guidelines purposes. In support, Carter cites to United States v. Yagar, 404 F.3d 967, 971 (6th Cir. 2005), which held that an individual suffering a monetary loss that was short-lived and immediately covered by a third party is not a victim for sentencing purposes. Carter did not raise this issue below.

Under the Guidelines, a "victim" is "any person who sustained any part of the actual loss." USSG § 2B1.1, cmt. (n.1). "Actual loss" is in turn defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." USSG § 2B1.l, cmt. (n.3(A)(i)). A defendant is only entitled to a credit against loss where money or property is returned "by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." USSG § 2B1.1, cmt. (n.3(E)(i)). Moreover, the Eleventh Circuit held that a defendant who is entitled to

credit by definition has caused an initial loss to a third party, thus making the third party a victim, albeit a reimbursed victim. See United States v. Lee, 427 F.3d 881, 895 (11th Cir. 2005) (criticizing and distinguishing Yagar). We have not addressed the question of the reimbursed victim, and we decline to do so at this juncture because, even applying Yager, Carter is not entitled to relief.

Here, there was no evidence that the reimbursements were made immediately or prior to the time the offense was detected. To the contrary, according to Carter's brief and the evidence at trial, some of the repayments were made by court order (clearly AFTER the offense was detected), some were not complete, and none were alleged to have been made in conjunction with Carter. Given the lack of argument or evidence from Carter at the sentencing hearing and the lack of agreement amongst the courts that have looked at this issue, we conclude that the district court did not commit either significant procedural error or plain error in counting victims who had subsequently been reimbursed by third parties. See United States v. Olano, 507 U.S. 725, 734 (1993) (holding that error is "plain" when it is "clear under current law").

Finally, Carter argues that the victims listed in the presentence report, but not mentioned at trial, were not specifically linked to him. The presentence report included a

detailed report of all the money orders involved in the case. According to the report, the conspiracy, of which Carter was a driving force, passed money orders to sixteen financial institutions. There was testimony at the sentencing hearing that these money orders were included because they all fit the specific, detailed pattern of the conspiracy. Carter did not challenge the accuracy of the report and failed to provide any evidence that any of the money orders which had been included in his relevant conduct were included incorrectly. Accordingly, the district court's conclusion that there were more than ten victims was not clearly erroneous. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) ("A mere objection to the finding in the presentence report is not sufficient . . . . Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation.").

Based on the foregoing, we affirm Carter's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED