

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-2009

# USA v. Adjei

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2295

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Adjei" (2009). *2009 Decisions.* Paper 1854.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1854

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2295
_____

UNITED STATES OF AMERICA

v.

RICHARD ADJEI,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 06-cr-00055)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
January 6, 2009

Before:  FUENTES and FISHER, *Circuit Judges*, and PADOVA,[*] *District Judge.*

(Filed: February 19, 2009 )
_____

OPINION OF THE COURT
_____

---

[*]Honorable John R. Padova, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Richard Adjei pleaded guilty to four counts of violating federal law in relation to his conduct of using stolen identities to file false tax returns. Adjei was sentenced to a total of 75 months of imprisonment. On appeal, he raises two challenges to his sentence. For the reasons set forth below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On May 11, 2006, a federal grand jury in Delaware returned a four-count indictment charging Adjei with various violations of federal law. On November 16, 2006, Adjei waived the indictment and pleaded guilty to an information charging him with one count of bank fraud in violation of 18 U.S.C. § 1344, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A, one count of engaging in monetary transactions using property derived from unlawful activity in violation of 18 U.S.C. § 1957, and one count of filing false claims in violation of 18 U.S.C. § 287. The Memorandum of Plea Agreement provided that "[i]f the Government in its sole discretion determines that the defendant has fulfilled his obligations of cooperation," then at sentencing the Government would (1) make Adjei's cooperation known to the District Court; (2) enter a motion for departure if Adjei provided substantial and truthful

2

assistance in the investigation or prosecution of another person; and (3) make sentencing recommendations that the Government deemed appropriate.

Additionally, in the plea agreement, Adjei admitted that between November 2005 and April 2006 he filed 175 false tax returns with the Internal Revenue Service. Adjei filed these tax returns by using stolen identification information from hospital patients – which was taken from a billing collection company used by multiple hospitals – and did so without the knowledge or consent of the individuals whose identities he misappropriated. Adjei also used 149 of the fraudulent refund claims to secure refund anticipation loans from HSBC Bank, JP Morgan (Bank One), and Santa Barbara Bank & Trust (SBB&T).

The District Court held a sentencing hearing on April 17, 2007. At this time, Adjei objected to the amount of loss calculation set forth in the Presentence Investigation Report (PSR). The PSR determined that the amount of loss that Adjei intended to cause was more than $1 million but less than $2.5 million. The District Court sustained Adjei's objection and determined that the proper range for the amount of loss was between $400,000 and $1 million. Adjei did not object to any of the other calculations contained in the PSR. Adjei's base offense level of six under U.S.S.G. § 2B1.1(a)(2) was increased fourteen levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H) for the intended loss, four levels pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because the offense involved more than fifty victims, and one level pursuant to U.S.S.G. § 2S1.1(b)(2)(A) because he was convicted

under 18 U.S.C. § 1957. Additionally, a three-level reduction for acceptance of responsibility was applied. Thus, Adjei's total offense level was 22 and his criminal history category was I. Based on these calculations, the District Court determined that the corresponding Guidelines range was between 41 and 51 months of imprisonment on Counts One, Three, and Four. A mandatory two-year minimum sentence of imprisonment was statutorily required on Count Two and would run consecutive to any sentence imposed under the other counts.

Although defense counsel did not make any objections to the calculation of the Guidelines sentence, he did argue for a downward variance to a sentence "not much above" the two-year mandatory minimum set by 18 U.S.C. § 1028A. He stated:

> Mr. Adjei has, from the very beginning, acknowledged his guilt. He has been debriefed by the government. He has told the government about other people who were involved, the identity of the individual who supplied him with the Social Security numbers. He has – I mean, unfortunately, the government has not seen fit to file a motion for downward departure or a motion under 3553(e) for a sentence below the mandatory minimum of two years in this case.

(App. 40-41.) After listening to testimony from a director of the hospital billing company and arguments from both parties, the District Court specifically found that as a result of Adjei's conduct, the individual hospital patients

> had to engage in a long, drawn-out process to regain their identities and obtain proper tax returns. Not only was this process burdensome, but in the words of some of the victims whose identities you stole, they quote, it 'mess[ed] up their finances,' . . . during a difficult period of time in their lives with respect to their individual health conditions.

4

(App. 56-57.) The District Court proceeded to sentence Adjei to 51 months of imprisonment on Counts One, Three, and Four, and an additional 24 months of imprisonment on Count Two. Adjei timely appealed the judgment of sentence.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we have jurisdiction to review the District Court's judgment of sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Because Adjei did not object to the number of victims enhancement at sentencing, we review his challenge to the application of this provision for plain error. Under the plain error standard, "we may vacate a sentence and remand for resentencing only if we find that (1) an error was committed; (2) the error was plain, that is, it is 'clear' and 'obvious;' and (3) the error 'affected [the defendant's] substantial rights.'" *United States v. Nappi*, 243 F.3d 758, 762 (3d Cir. 2001) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). We exercise plenary review over Adjei's breach of plea agreement argument. *United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005).

## III.

Adjei challenges his sentence on two separate grounds. First, he argues that the District Court committed plain error by applying the number of victims sentence enhancement pursuant to U.S.S.G. § 2B1.1(b)(2). Second, he argues that the Government acted in bad faith by failing to inform the District Court of the nature and extent of his

5

cooperation and by failing to move for a downward departure under U.S.S.G. § 5K1.1, 28 U.S.C. § 994(n), and 18 U.S.C. § 3553(e). We will address each argument in turn.

A.

Adjei acknowledges that he did not make an objection to the application of the number of victims enhancement at the time of sentencing and therefore our review of this claim is for plain error. Nonetheless, Adjei contends that the District Court committed plain error because only those persons who sustain "actual loss" meet the definition of "victim" under U.S.S.G. § 2B1.1(b)(2), and as applied to the facts of his case, the only victims were the Internal Revenue Service, the three banks, and the hospital billing company. Accordingly, Adjei argues that it was plain error for the District Court to count the individual hospital patients as victims for the purpose of applying the four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(B).

Under the plain error standard, Adjei's argument fails because he cannot establish that the District Court committed an error that was clear and obvious. To begin, the Guidelines define "victim" as "any person who sustained any part of the actual loss." U.S.S.G. § 2B1.1 cmt. n.1. Relatedly, "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). "Pecuniary harm" is defined as "harm that is monetary or that otherwise is readily measurable in money," but "does not include emotional distress, harm to reputation, or other non-economic harm." U.S.S.G. § 2B1.1 cmt. n.3(A)(iii). At the time

6

Adjei was sentenced, we had not yet issued a precedential opinion interpreting the definition of "victim" under U.S.S.G. § 2B1.1 and its Application Notes. Since that time, we decided *United States v. Kennedy*, – F.3d – , 2009 WL 250105 (3d Cir. Feb. 4, 2009), in which we held that "only those who are actually harmed by the crime can be counted as victims for purposes of USSG § 2B1.1(b)(2)." *Id.* at *1. In *Kennedy*, we determined that it was error for the district court to include individual account holders as victims under U.S.S.G. § 2B1.1(b)(2) because it was undisputed that the individuals "did not 'sustain[] any part of the actual loss,'" and the Government did not "prove that the account holders even knew that their funds had been stolen before they were completely reimbursed." *Id.* at *3. But our decision in *Kennedy* did not answer the question that is at issue in this case, namely, whether defrauded individuals who "spent time or money seeking reimbursement" qualify as victims under U.S.S.G. § 2B1.1(b)(2). *Id.* at *6. Thus, applying the number of victims enhancement to the factual scenario presented in the instant case – where there was testimony about the time and effort expended by individual hospital patients in order to obtain their rightful tax refunds – was not error under current law when Adjei was sentenced and, following our decision in *Kennedy*, still cannot conclusively be characterized as such.

Furthermore, although in recent years several Courts of Appeals have addressed questions related to the application of U.S.S.G. § 2B1.1(b)(2), the differing results reached in those cases undermine Adjei's assertion that the District Court committed clear

and obvious error. *Compare United States v. Pham*, 545 F.3d 712, 720-21 (9th Cir. 2008) (explaining that if, prior to being reimbursed, individual account holders experienced losses that were not short-lived, U.S.S.G. § 2B1.1(b)(2) could be applied), *United States v. Abiodun*, 536 F.3d 162, 169 (2d Cir. 2008) (concluding that because each individual "had to spend an appreciable amount of time securing reimbursement from their banks or credit card companies" they could be considered victims under U.S.S.G. § 2B1.1(b)(2)), *and United States v. Lee*, 427 F.3d 881, 895 (11th Cir. 2005) (finding that U.S.S.G. § 2B1.1(b)(2) applied because individuals suffered "more than a small out-of-pocket loss and were not immediately reimbursed"), *with United States v. Conner*, 537 F.3d 480, 489 (5th Cir. 2008) (concluding that because individual accounts were quickly reimbursed by credit card companies the individuals could not be counted as victims under U.S.S.G. § 2B1.1(b)(2)), *United States v. Icaza*, 492 F.3d 967, 970 (8th Cir. 2007) (finding that U.S.S.G. § 2B1.1(b)(2) did not apply where defendants stole from hundreds of retail stores in a franchise because only the parent corporation ultimately bore the loss), *and United States v. Yagar*, 404 F.3d 967, 971 (6th Cir. 2005) (holding that individual account holders could not be counted as victims under U.S.S.G. § 2B1.1(b)(2) because "they were fully reimbursed for their temporary financial losses"). Even courts which determined that reimbursed individuals did not meet the definition of "victims" under U.S.S.G. § 2B1.1(b)(2) recognized that under different circumstances such individuals might qualify as victims. *See Conner*, 537 F.3d at 491 (noting that if individual account holders

8

"encountered difficulty in obtaining reimbursement, a different question would be presented"); *Yagar*, 404 F.3d at 971 (noting that "there may be situations in which a person could be considered a 'victim' under the Guidelines even though he or she is ultimately reimbursed").

Consequently, even if we were today to accept Adjei's interpretation of U.S.S.G. § 2B1.1(b)(2), we would still be unable to conclude that the District Court committed an error that was clear and obvious under existing law when it included the individual hospital patients as victims for the purpose of sentencing. *See United States v. Clark*, 237 F.3d 293, 299 (3d Cir. 2001) (finding no plain error where the defendant could not show that at the time of sentencing the district court committed an "error [which was] clear under current law") (internal quotation marks and citation omitted). Therefore, under the plain error standard, Adjei's challenge to the application of the number of victims enhancement must fail.

B.

Adjei also argues that the Government acted in bad faith by failing to carry through with the terms of the plea agreement after he fulfilled his obligations to cooperate, but he notes that these allegations of bad faith were not brought to the District Court's attention. Furthermore, Adjei recognizes that the plea agreement does not contain a promise that the Government will file a downward departure motion, but instead it reserves "sole discretion" for the Government to decide whether to make such a motion.

9

Despite this recognition, Adjei argues that the Government's refusal to file a downward departure motion is attributable to bad faith and constitutes a violation of the plea agreement.

Although Adjei did not raise this argument at any point prior to this appeal, we will nonetheless exercise plenary review over this contention. *See Hodge*, 412 F.3d at 485 ("We rejected the notion that breach-of-plea arguments should be reviewed for plain error, and instead held that we must exercise plenary review." (citing *United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir. 1989))). Adjei bears the burden of establishing by a preponderance of the evidence that the Government breached the plea agreement. *See United States v. Huang*, 178 F.3d 184, 187 (3d Cir. 1999); *see also United States v. Isaac*, 141 F.3d 477, 484 (3d Cir. 1998) ("[D]efendant must make a showing of bad faith to trigger some form of hearing" on the question of whether the prosecutor's decision not to file a downward departure motion violated the plea agreement (internal quotation marks omitted)).

The only relevant reference to the breach of plea argument contained in the record is defense counsel's statement at sentencing that Adjei "has been debriefed by the government. He has told the government about other people who were involved, the identity of the individual who supplied him with the Social Security numbers. . . . [U]nfortunately, the government has not seen fit to file a motion for downward departure or a motion under 3553(e)." But this statement contains no allegation that the

10

Government acted in bad faith by failing to file a motion at sentencing and provides no accusations of improper motive for us to review. The fact that the Government did "not see[] fit to file a motion" hardly demonstrates that it acted in bad faith and breached the plea agreement, especially when we consider that the plea agreement reserved "sole discretion" to the Government to determine if Adjei provided substantial and truthful assistance. Moreover, although the statement highlights that Adjei was debriefed by the Government, this alone does not support his contention that the Government acted in bad faith in light of the express language of the plea agreement, which stated that "a debriefing does not amount to substantial assistance." There is simply no evidence of the Government's bad faith, let alone the preponderance of evidence which Adjei would need in order to carry his burden of demonstrating that the Government breached the plea agreement. Consequently, we are unable to conclude that the Government's failure to move for a downward departure constituted a breach of the plea agreement, and Adjei's argument to this effect must be rejected.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.