[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 25, 2011
JOHN LEY
CLERK

No. 10-10419
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-20444-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY DEONARINESINGH,
a.k.a. Red,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 25, 2011)

Before WILSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Randy Deonarinesingh appeals his 97-month sentence, imposed after he

pleaded guilty to conspiring to commit bank fraud, make and possess counterfeit

securities, and transfer an implement designed for making counterfeit securities, in violation of 18 U.S.C. § 371, and to bank fraud, in violation of 18 U.S.C. § 1344. He argues that the district court erred in (1) finding that he was subject to a four-level increase for being an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a); (2) imposing a two-level increase for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(9)(C); and (3) determining that the total number of victims exceeded fifty, pursuant to U.S.S.G. § 2B1.1(b)(2)(B). He also contends that his sentence was substantively unreasonable.

## I.

A defendant's role as an organizer or leader is a factual finding that we review for clear error. *United States v. Jimenez*, 224 F.3d 1243, 1250–51 (11th Cir. 2000). We will not find clear error unless "'we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quoting *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003)).

To assess whether a defendant was an "organizer or leader of a criminal activity," we consider several factors, including:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of

2

> participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Gupta*, 463 F.3d 1182, 1198 (11th Cir. 2006) (citing U.S.S.G. § 3B1.1 cmt. n.4). Not all of these considerations need to be present. *United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005) (per curiam). "Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam) (quoting *United States v. Brown*, 944 F.2d 1377, 1385 (7th Cir. 1991)).

Deonarinesingh argues that, at most, he manufactured or supplied the counterfeit checks but that he did not engage in the organization or management of the conspiracy or its participants. An United States Secret Service agent testified that Deonarinesingh specifically instructed employees of check cashing stores to give him checks drawn on small businesses' accounts from specific banks and for specific amounts. Then, either the store's employees or his recruiters would give the checks to Deonarinesingh, at which point he would make the counterfeit checks. Finally Deonarinesingh would give the checks to his recruiters, who would drive check passers to the banks that he indicated and would bring the money back to him.

On this record, Deonarinesingh had a leadership role in the conspiracy. While most of the conspiracy's participants did not know each other, they knew Deonarinesingh and described him as the "boss." Accordingly, the district court did not clearly err in concluding that Deonarinesingh was an organizer or leader of the conspiracy under U.S.S.G. § 3B1.1(a).

## II.

This Court reviews a finding that a defendant used "sophisticated means" for clear error. *United States v. Robertson*, 493 F.3d 1322, 1329–30 (11th Cir. 2007). The Guidelines state that two levels are added to a defendant's base offense level "if the offense involved sophisticated means." U.S.S.G § 2B1.1(b)(9)(c). "Sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and ordinarily includes conduct like hiding assets or transactions "through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2B1.1 cmt. n.8(B).

Accordingly, Deonarinesingh argues the district court clearly erred in finding he used sophisticated means because there was nothing especially complex or intricate about his conduct. He contends that at best, he used a widely available program like Adobe Photoshop, a scanner, a computer, and widely available blank

4

check forms to create counterfeit checks, and that there was no evidence that he engaged in any complex financial transactions.

But the fact that Deonarinesingh did not use offshore bank accounts or route transactions through fictitious business entities is unavailing. *See United States v. Campbell*, 491 F.3d 1306, 1315–16 (11th Cir. 2007) (affirming sentence and holding in tax case that use of campaign accounts and credit cards issued to other individuals constituted sophisticated means designed to conceal defendant's fraud from authorities). And "[t]here is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).

The district court did not clearly err in finding Deonarinesingh used sophisticated means. Deonarinesingh specifically told employees of check cashing stores that he wanted checks that were drawn on small businesses and from specific banks for amounts between $800 and $1,000. He personally manufactured counterfeit checks, told recruiters and check passers where to negotiate checks, and called banks to confirm that there was money in the accounts. The scheme took years of planning, coordination, and efforts of the many individuals involved in the criminal operation.

5

Arguably, no single aspect of Deonarinesingh's activity was itself sophisticated, but in light of the nature and extent of his entire scheme, we have no "definite and firm conviction" that the district court committed a mistake when it enhanced Deonarinesingh's sentence for sophisticated means. *See United States v. Cook*, 336 Fed App'x 875, 879 (11th Cir. 2009) (per curiam) (no clear error where counterfeit check fraud conspiracy "employed a number of procedures to ensure that the victim banks and account holders would not realize what was happening").

## III.

A defendant's base offense level is increased by four levels if the relevant offense involved fifty or more victims. U.S.S.G. § 2B1.1(b)(2)(B). A "victim" is "any person who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1 cmt. n.1. The Guidelines define "actual loss" as "reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. at n.3(A)(i).

Deonarinesingh contends that there were only two victims, Bank Atlantic and Wachovia. He argues we should follow the reasoning in *United States v. Yagar*, 404 F.3d 967 (6th Cir. 2005), and find the individual account holders were not "victims" because the banks fully reimbursed them for their temporary losses.

In *United States v. Lee*, 427 F.3d 881, 895 (11th Cir. 2005), this Court declined to adopt the reasoning of *Yagar* because it did "not comport with the Guidelines." Instead, we held that victims who were reimbursed for their temporary losses still counted as victims under the Guidelines. *Id*. at 894–95. We may not disregard the holding of a prior Eleventh Circuit opinion unless the Supreme Court, or this Court sitting *en banc*, overrules that opinion. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).

The testimony of the bank investigator established that well over fifty individual account holders were defrauded, and under our precedent in *Lee*, those individual account holders qualify as victims for purposes of U.S.S.G § 2B1.1(b)(2)(B). We thus find no reversible error in the district court decision.

IV.

Deonarinesingh was sentenced to 97-months' imprisonment, which was at the low end of the guidelines range of 97 to 121 months. The district court did not abuse its discretion by sentencing Deonarinesingh at the low end of the guidelines range.

We review sentences for reasonableness, using an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). When evaluating the "substantive reasonableness" of a sentence, we consider the

7

totality of the circumstances. *Id.* On appeal, the party challenging the sentence bears the burden of establishing that the sentence is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). We determine whether the sentence is substantively reasonable based on the factors in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. While a within-guidelines sentence is not *per se* reasonable, we ordinarily expect it to be reasonable. *Talley*, 431 F.3d at 788.

Deonarinesingh argues his sentence is unreasonable because his co-defendants were given lower sentences. But we have held that "[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." *United States v. Regueiro*, 240 F.3d 1321, 1325–26 (11th Cir. 2001) (per curiam). "While § 3553(a)(6) speaks of 'the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct,' the provision is more concerned with the unjustified differences across judges or districts than between co-defendants in a single case." *United States v. Edinson*, 209 Fed App'x 947, 949 (11th Cir. 2006) (per curiam) (quoting *United States v. Boscarino*, 437 F.3d 634, 638, (7th Cir. 2006)). Moreover, Deonarinesingh has failed to show that his 97-month sentence was unreasonable compared to the sentences of his co-defendants, especially given

his extensive level of participation in the offense and his criminal history.

**AFFIRMED.**